DIANA GRIBBON MOTZ, Circuit Judge,
dissenting:
Respectfully, I dissent. Elizabeth Brinkley did not receive what the Equal Pay Act promises — equal wages for equal work.
I.
In January, 1995, the Harbor Recreation Club (HRC) chose Brinkley to be its General Manager and agreed to pay her $50,-000 annually.
In the eighteen months that she served in this position, HRC never raised Brinkley’s salary. Then, dissatisfied with Brinkley’s performance, HRC hired James Paschal to take over the management of the club, and agreed to pay him first $1,200 a week, or $62,400 per year, and ultimately $75,400 annually. The club subsequently fired Brinkley. HRC concedes that Brinkley and Paschal performed the same duties under the same working conditions and there can be no dispute that Brinkley received lower pay than Paschal for performing these duties. Thus, Brinkley unquestionably has made out a prima facie case under the Equal Pay Act (EPA), 29 U.S.C.A. § 206(d)(1) (West1998). See Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).
“Once a plaintiff presents a prima facie case, the defendant has the burden of showing, by a preponderance of the evidence, that the pay differential was based on one of the four statutory exceptions.” Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322, 325 (4th Cir.1989) (emphasis added). The majority ignores the requirement that these statutory exceptions, including the final catchall exception — that the pay differential is based on a factor other than sex — “must be narrowly construed” as well as the frequent admonition that an employer’s burden in demonstrating that it is entitled to one of the statutory defenses is a “heavy” one. Id.; see also Timmer v. Michigan Dep’t of Commerce, 104 F.3d 833, 843, 844 (6th Cir.1997). Although the majority does acknowledge that, with respect to the affirmative defenses, the employer must meet both the burden of production and of persuasion, see Corning Glass, 417 U.S. at 196, 94 S.Ct. 2223; 29 U.S.C.A. § 206(d)(1); see also Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 344 (4th Cir.1994), it refuses to hold HRC to this burden.
Instead the majority improperly shifts the burden of proof to Brinkley by distorting applicable summary judgment principles. It does so by focusing almost exclusively on the movant’s initial burden, misconstruing that, bur den in this Equal Pay Act case, and then virtually ignoring the crux of the summary judgment inquiry: whether, viewing all of the evidence in the light most favorable to the non-mov-ant, there exists a material issue for trial. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The majority asserts that a “defendant may prevail on its motion for summary judgment and establish an affirmative defense when it has produced ‘credible evidence ... that would entitle it to a directed verdict if not controverted at trial.’ ” Ante at 613-14 (emphasis added)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) *618 (Brennan, J., dissenting)). While technically accurate, i.e., a defendant with such evidence may ultimately prevail, this statement impropérly suggests that a court-may award summary judgment on the basis of the movant’s evidence alone. In fact,- a court considers whether a movant’s evidence taken alone could support a directed verdict only to determine if a mov-ant who has the burden of persuasion at trial- has established its initial burden on summary judgment. See Celotex, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). If the movant passes this initial hurdle, only the burden of production shifts to the non-movant. Id. The ultimate- burden of persuading the court of “the nonexistence of a ‘genuine issue’ [remains] on the party moving for summary judgment.” Id. at 330, 106 S.Ct. 2548; see also Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir.1993).
Although it concentrates its attention on the initial summary judgment burden, the majority fails to recognize the full scope of that burden in the context of this case. A prima facie case under the Equal Pay Act creates a presumption of discrimination, see Brinkley-Obu, 36 F.3d at 344,* and thus the defendant’s evidence supporting an affirmative defense under the Act is never truly uncontroverted. Accordingly, an Equal Pay Act defendant must do more than merely produce evidence of its affirmative defense; it must overcome the presumption of discrimination and the evidence giving rise to it.
The majority’s remaining summary judgment analysis is likewise seriously flawed. In fact, in holding that HRC is entitled to summary judgment because Brinkley “has not produced any evidence that indicates that Paschal was paid more, or that she was paid less, because of sex,” ante at 615-16, the majority misconstrues the burden of proof under both the Equal Pay Act and the summary- judgment rule. Neither require Brinkley, as the-majority does, see id., to produce evidence that the salary differential was based on sex. Rather, in making out a prima facie case under the Equal Pay Act, Brinkley created a presumption of discrimination based on sex. See Brinkley-Obu, 36 F.3d at 344. To overcome, that presumption, HRC as her “employer must prove that sex provide[d] no part of the basis for the wage differential.” Timmer, 104 F.3d at 844 (emphasis added) (internal quotations and citations omitted). Brinkley, by contrast, merely'needs to point to “specific facts showing there is a genuine issue for trial” in order to respond to the defendant’s initial summary judgment showing. White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th Cir.1987). Indeed, to meet her burden of production, Brinkley need only “come forward with facts sufficient to create a triable issue of fact.” Temkin v. Frederick County Comm’rs, 945 F.2d 716, 718-19 (4th Cir.1991); see also, Celotex, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). This she unquestionably did. See infra at 30-32.
The ultimate burden of persuasion on-summary judgment indisputably rests with the movant, and thus it was HRC’s burden to demonstrate its entitlement to judgment as a matter of law- based on the record as a whole. See Celotex, 477 U.S. at 330 & n. 2, 106 S.Ct. 2548 & n. 2 (in determining whether moving party has met its burdens and is entitled to summary judgment, “the court is obligated to take account of the entire setting of-the case and must consider all papers of record as well as any *619 materials prepared for the motion”) (Brennan, J., dissenting); see also 10A Charles Alan Wright et al., Federal Practice and Procedure § 2727, at 476, 480 (3d ed.1998). Accordingly, HRC had to demonstrate that no reasonable factfinder faced with all of the evidence forecast by HRC and by Brinkley could conclude that Brinkley was paid less than Paschal because of her sex.
Instead of requiring HRC to carry this burden, the majority effectively bases its. affirmance of summary judgment to HRC solely on its conclusion that HRC carried its initial summary judgment burden; the majority stalwartly refuses to consider carefully either the presumption of discrimination created by Brinkley’s prima facie case or her evidence of numerous material factual disputes. The majority thus denies Brinkley that to which all parties opposing summary judgment are entitled, i.e., the court’s construction of the “facts and inferences in the light most favorable” to them. United States v. Leak, 123 F.3d 787, 794 (4th Cir.1997) (quoting Donmar Enterprises, Inc. v. Southern Nat’l Bank of N.C., 64 F.3d 944, 946 (4th Cir.1995)). See also 10A Wright et al, supra § 2727, at 459 (“Because the burden is on the movant, the evidence presented to the court always is construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it.”) (emphasis added) (citing numerous cases, including Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
In sum, the majority is only able to affirm here by holding that Brinkley failed to carry a burden of production that she never had, and by exempting HRC from a burden of persuasion that it should, have been required to carry. If the majority had held HRC to its heavy burden of proof rather than improperly shifting this burden to Brinkley, and if the majority had evaluated the evidence in the summary judgment record in the light most favorable to Brinkley as the non-moving party, it could only have reversed the grant of summary judgment to HRC.
II.
The majority also seriously errs in its analysis of the- reasons proffered by HRC for payment of a greater:salary to a man than it had paid to a woman for the same work.
First, notwithstanding the majority’s suggestion, HRC’s- decision to pay Brinkley less than Paschal for the same work cannot be justified simply because the market would bear this result. As the Supreme Court has explained, while it may be “understandable as a matter of economics” that a company wishes to take advantage of a market in which it can pay a woman less than a man for the same work, such “differentials] nevertheless became illegal once Congress enacted into law the principle of equal pay for equal work.” Corning Glass, 417 U.S. at 205, 94 S.Ct. 2223. For this reason, we and many of our sister circuits have expressly held that the fact that a woman has less bargaining power to demand a higher salary than a man does not constitute a valid factor “other than sex” under the Equal Pay Act. See, e.g., Brock v. Georgia Southwestern College, 765 F.2d 1026, 1037 (11th Cir.1985); Horner v. Mary Institute, 613 F.2d 706, 714 (8th Cir.1980); Brennan v. Prince William Hosp. Corp., 503 F.2d 282, 286 (4th Cir.1974); Brennan v. Victoria Bank & Trust Co., 493 F.2d 896, 902 (5th Cir.1974); Brennan v. City Stores, Inc., 479 F.2d 235, 241 n. 12 (5th Cir.1973); Hodgson v. Brookhaven Gen. Hosp., 436 F.2d 719, 726 (5th Cir.1970).
Second, contrary to the majority’s statement that “the record reflects that the Board followed the same procedures when it evaluated Brinkley’s initial salary” as when it evaluated Paschal’s, ante at 615, the record reveals nothing of the kind. Rather, the record evidence is that HRC totally failed to research comparable club salaries when it hired Brinkley. More *620 over, its failure -to investigate an appropriate salary for Brinkley provides no justifi-' cation for its payment of a far greater salary to Paschal for the same work. In Brewster v. Barnes, 788 F.2d 985 (4th Cir.1986), we rejected this excuse and concluded that the employer had not met its-burden of proving its affirmative defense when it had failed to investigate whether the plaintiff was eligible for a pay-raise. Id. at 992. Thus, the fact that HRC researched the proper salary range in order to pay Paschal the “going rate” for country club managers cannot justify its payment to Brinkley of considerably less money for the same work.
This leaves Paschal’s asserted better experience and salary history, which allegedly indicated that he was a more valuable employee than Brinkley, as the only bases other than sex for paying Paschal more than Brinkley. Experience and salary history differentials may, in the proper case, constitute bases upon which to pay a man more than a woman for the same work. However, only if an employer has proffered some valid business reason for believing that these-factors justify paying a man more than a woman (or a woman more than a man) should the employer be permitted to rely on such rationales because “[wjithout a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would bé sanctioned.” Aldrich v. Randolph Cent Sch. Dist., 963 F.2d 520, 525 (2d Cir.1992); see also EEOC v. J.C. Penney Co., Inc., 843 F.2d 249, 253 (6th Cir.1987); Bence v. Detroit Health Corp., 712 F.2d 1024, 1030-31 (6th Cir.1983). HRC, of course, provided no such evidence. But even if HRC were not held to this business-relatedness requirement, the record unquestionably reveals a genuine dispute as to whether Paschal’s experience was actually “better” than Brinkley’s and whether his salary history actually did demonstrate that he was “worth more” to HRC than Brinkley.
With regard to the-varying past experience between -Paschal and Brinkley, Paschal submitted a resume listing eleven years of experience working in country clubs, but he had no college degree, no formal business education, and no professional' certification. At the time HRC made Brinkley its General Manager, her only previous country club experience was her two years as Business Manager with HRC; however, in that position she had been responsible, in HRC’s words, for “many of the duties usually assumed by a General- Manager” and had performed them so well that HRC promoted her to General Manager. Moreover, prior to being hired by HRC, Brinkley had earned a college degree, majoring in business administration, completed some credits toward a graduate degree, and, after taking additional courses and passing an examination, had been certified as a Credit Executive. Brinkley also had twenty years of general business experience, including twelve years as owner and operator of a restaurant. Brinkley’s longer experience in the business world and far more extensive business training resulted in concrete benefits for HRC — for example, she could operate HRC’s computer system and understood its accounting programs; Paschal could do neither.
A jury could conclude that Paschal’s greater country club experience justified HRC’s paying him substantially more than it paid Brinkley even though, when the club hired him, Paschal was an unknown quantity while Brinkley had intimate knowledge of HRC, greater general business experience, and far superior business training. But a reasonable jury could as easily - reach the opposite conclusion; it could conclude that Paschal’s experience was not superior to Brinkley’s and so could not serve as a basis other than sex upon which to justify the pay differential. Such a conclusion would be entirely supported by the record, particularly in light of Paschal’s admission that he had been fired from or forced to leave earlier positions, *621 evidence that certainly raises a dispute as to the quality of his experience. In the end it is up to the jury to decide if Brinkley’s business experience is enough to “overcome” Paschal’s longer tenure in the field. See ante at 616.
As for salary history, Paschal maintained that he held jobs ranging in salary from $65,000 to $85,000 before coming to HRC, while Brinkley’s highest salary prior to being appointed General Manager of the club paid only $30,000. However, Paschal admitted in deposition that he had been fired from one previous country club position and forced to retire from another. Furthermore, HRC failed to contact Paschal’s last employer in order to determine if he was valued at such a high salary, an omission that even an HRC board member categorized as “careless.”
A reasonable jury could conclude that Paschal’s higher salary did signal that he was a more valuable employee. But a jury certainly could just as reasonably conclude that Paschal’s checkered job history demonstrated that his “worth” in the job market did not exceed (or even equal) Brinkley’s and'that HRC failed to prove by a preponderance of the evidence that it paid Paschal more than Brinkley based on a factor other than sex.
Keziah constitutes clear circuit precedent with facts stunningly close to those at hand. See 888 F.2d at 322. There, as here, the employer paid a man a higher salary for performing “the exact same job” as the female plaintiff. Id. at 324. There, as here, the district court granted summary judgment to the employer on the plaintiffs Equal Pay Act claim, finding the salary differential justified by the man’s “experience and customer base” despite the fact that the female plaintiff offered evidence of her own prior experience, which, while different, “[ajrguably ... was as related to her position” as her comparator’s experience. Id. at 325. There, as here, “objective evidence in the record” cast doubt on the comparator’s experience. Id. In Keziah, we reversed the grant of summary judgment to the employer, explaining that the “record, when reviewed as a whole, demonstrates the company’s failure to prove that the salary differential resulted from ‘any factor other than sex’ ” and remanded due to the genuine dispute as to whether the male comparator’s experience was really better than the female plaintiffs so as to justify a higher wage. Id. (emphasis added).
Similarly, in Fowler v. Land Management Groupe, Inc., 978 F.2d 158 (4th Cir.1992), we reversed the district court’s grant of judgment for the employer on the plaintiffs Equal Pay Act claim. In Fowler, as here, the employer conceded that the plaintiff presented ample evidence for a jury to find that plaintiff made out a prima facie case under the Act. Id. at 161. However, the employer in Fowler contended, as HRC does, that its evidence justifying the pay differential on a basis other than sex — including the comparator’s greater professional qualifications and licenses, greater and more relevant practical experience in the field, higher profit-making potential, and a general impression that he was a “more important” employee — was so overwhelming that no reasonable jury could have found for plaintiff. Id. Although the district court agreed and granted judgment for the employer after a jury verdict for the plaintiff, we reversed. We noted that although the employer’s evidence was persuasive, evidence in the record — including evidence of the plaintiffs higher level of formal education— served to counter the employer’s proffered reasons for paying the comparator more than the plaintiff. Id. Thus again in Fowler, as here, evidence in the record placed the employer’s justification into doubt; as such “the question of whether the pay differential between [comparator] and [plaintiff] was adequately justified by nondiscriminatory factors was appropriately a matter for determination by the jury.” Id. at 162.
Keziah and Fowler require reversal here. The record in this case, as in Kezi- *622 ah and Fowler, unquestionably reveals a material dispute as to whether a factor other than sex served as the basis for paying Paschal far more than Brinkley. By calling into doubt HRC’s evidence, Brinkley clearly did more than “merely pointf ] to the existence of a pay differential,” ante at 615-16 n. 13, she “produee[d] evidence, direct or circumstantial, that controverts the defendant’s evidence that a legitimate ground justifies the pay difference,” id., and placed the issue squarely in dispute. Judgment as a matter of law for the employer is therefore as improper in this case as it was in Keziah and Fowler. The majority’s relegation of Keziah and Foiuler to a footnote and its failure to offer any meaningful distinction of them speaks volumes.
III.
The Supreme Court explained twenty-five years ago that Congress enacted the Equal Pay Act to remedy a “serious and endemic problem” — the fact that the wage structure of “many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.” Corning Glass, 417 U.S. at 195, 94 S.Ct. 2223 (internal quotation marks omitted). Today, in depriving Brinkley of a trial on her Equal Pay Act claim, the majority frustrates Congress’s clear purpose in enacting this legislation. I regret the majority’s ill-advised action and dissent from it.

 The majority's suggestion that I err in “characterizing the prima facie case as 'creating] a presumption of discrimination,' ” ante at 615-16 n. 13, ignores recent circuit precedent that so holds. See Brinkley-Obu, 36 F.3d at 344 ("Under the Equal Pay Act, the plaintiff creates a presumption of discrimination when she establishes a prima facie case.”). The majority's refusal to follow this precedent is as ill-advised as it is improper. In this Circuit '.'a panel considers itself bound by the prior decision of another panel, absent an in banc overruling or a superseding contrary decision of the Supreme Court.” Busby v. Crown Supply, Inc., 896 F.2d 833, 840-41(4th Cir.1990).